Johnston, Ch.
I concur in the conclusion to which the Chancellor arrived in his decree.
It is very clear that the property, when originally mortgaged to the bank, and then passing as Lothrop’s wharf, did not include lots 8 and 9 ; but it is apparent that, from the time when Lothrop acquired these lots, he regarded them as a portion of the wharf property, and passed the whole under his assignment under that designation.
It is unquestionable that neither Price nor Mrs, Price acquired *469 title, by their purchases, to more than an undivided moiety of the lots I have mentioned. The mortgages under which they purchased included no more, and they purchased no more.
It is manifest, therefore, that at the time Mrs. Price purchased, the title to one undivided half of these lots was in the heir, or heirs of Price, subject to the trusts of the assignment; and the other half in Mrs. Price as purchaser. I speak, of course, of the paper title.
But she went into the possession of the whole; and, as the bill states, held it thenceforth as her own : a thing very natural for her to do — inasmuch as she understood herself as purchasing the whole of Lothrop’s wharf; of which Lothrop had, as early as 1825, regarded the lots 8 and 9, as integral portions.
Then if the trust estate in the half which was assigned to her husband, had descended to,her, as sole heir, and been held by her, along with the other half, which she had purchased ; been held by her as her own, as the bill states; I think it wquld be difficult for the plaintiff now, after the time which he has allowed to elapse, since the creation of the trust, (and especially after the opportunities he has had, and neglected,) to enforce his demand against the property.
There was nothing to prevent the enforcement of his demand in the life-time of Price, the assignee ; and nothing to prevent its enforcement during the pendency of Adger vs. Price, or the Bank vs. Adger et al. The assignment and all the mortgages were on record, and he must be held to have had full notice of the extent to which the property was liable to him.
There is another consideration. Hé' was brought in, as the Chancellor states, in the two cases I have mentioned. In the first of these cases there was a professed enumeration of all the assigned property then remaining, and Mrs. Price and her children were called upon to submit to an execution of the trusts which are supposed to have devolved upon them. No part of these lots was enumerated. The family of Price understood themselves as then called on to execute, and as actually executing, all the trusts incumbent upon them ; and Mrs. Price held these lots as her own, and free from all trusts, at least from that time. Why did not the plaintiff then interpose, and inform her that she was not fully executing the trusts?
When all these circumstances are put together — the lapse of time from the date of the assignment — the neglect of-the plaintiff — the intention of the heirs of the trustee to acquit themselves *470 of all the trusts imputed to them; and the holding of Mrs. Price for herself, and not in trust; I think there is too great laches, and too great lapse of time, to allow, the plaintiff to sustain his bill now.
But an argument has been urged to the following effect; that Mrs. Price as purchaser held only one undivided half of the lots, as tenant in common with the heir or heirs of her husband. That the other half either descended at common law upon Price’s oldest son, who has but recently attained full age, or upon herself and all her children, (the whole of whom were minors,) under the statute of distribution. That her possession being that of a tenant in common, was the possession, also, of the heir or heirs of the trustee, and did not bar them of their legal estate ; and that, of course, the trust still subsists, in virtue of the rights of the heirs of the trustee.
My opinion is, that the moiety subject to the trusts descended to the oldest son of the assignee, at common law.
The statute for the distribution of intestates’ estates (5 Stat. 162,) recites that: “ Whereas the convention of this State” “ did direct that the legislature should” “ pass laws for the abolition of the rights of primogeniture, and for giving an equitable distribution of the real estates of intestates.”
“ Be it, therefore, enacted, that the right of primogeniture be and the same is hereby abolished: and that when any person possessed of, interested in, or entitled unto a real estate, in his or her own right, in fee simple, shall die, without disposing thereof by will, the same shall be distributed in the following manner,” (fee.
Now my opinion is, that this has nothing to do with trust estates, but only concerns the distribution of those in which the intestate held the beneficiary interest in his own right.
We must remember that the object of the Act is to distribute estates among those interested in them; but trusts are not created, that the property should be distributed, but that the trusts may be executed. The Act only provides for the distribution of the intestate’s own property; and would be violated not only in its spirit and intent but in its letter, if extended to estates not his own. If this were left doubtful, and resort were had to considerations of mere convenience, to aid us in the construction of the statute, these would determine in favor of the descent at common law, and not under the statute. Trusts are often of long continuance ; being clogged with limitations and remain *471 ders sometimes determinable at distant periods. In the meantime, by the death of the trustees, and possibly of their issue, the trustees, (taking the descent to be cast by the statute) would become so numerous and so widely dispersed, that it would amount almost to an impossibility, in many cases, to bring them before the court, to answer to their duty. On the other hand, the descent at common law presents a single person, easily traceable, and easy to be reached. The costs in the one case would be exorbitant, in the other comparatively'inconsiderable.
It is said, however, that the statute leaves ho room for the descent at common law. That the right of primogeniture is expressly abolished, and to hold that it may still exist, in any case, is an infraction of the Act oí Assembly-; but the purposes for which this right was abolished, as well as the manner and connection in which it is done, manifest that this would be a very narrow and imperfect interpretation of the statute — the great purpose of which the solicitude of the convention ' bears evidence, was that property should be equalized by an organic law. This could not te done without abolishing the right of primogeniture ; and, therefore, the direction was given to abolish this right, to the end that real estate should be equally distributed; and the direction was exactly followed in the statute. The one right was abrogated and the other substituted uno flatu. ' But what would the distribution of trust estates accomplish towards the equalization of property, or how would it accomplish the great purpose of the convention ?
If it be assumed that the right of primogeniture is unquali-fiedly and absolutely abrogated in all cases on the one hand, it is just as certain; — and by the same mode of literal construction, —that the'statute only provides for distributing the individual property of intestates on the other; and, then, as this does not include trust property, we are brought to the absurd conclusion that the title to such property does not descend at all: not at common law, for that descent is abolished ; nor under the statute, because that does not extend to it; a construction not to be entertained for a moment.
Other portions of the Act, which I have not quoted, might be brought to bear on this question, such as the provision relating to dower ; and the provision imposing the burden of a mortgage upon the property for equality of partition ; but I forbear to go-in to them, because too much time has been already consumed upon a point unnecessary to the case before us.
*472 Whéther the heir of Price as to this trust property be the oldest son, or his wife and children, can be of no sort of consequence in the present suit. In the one case, her possession as purchaser would be regarded as the possession of her son. In the other it .would enure to the benefit'of all her children, who would be her co-tenants. But' the bill alleges that she held in her own right; — that is, that she did not hold in trust. Her possession being that of her co-tenants, their possession must be regarded as equally exclusive of the trust. ■ 'And, then, when we consider the circumstances' to which I have already adverted, I think the plaintiff comes too late to insist on the obligation of theassignment.
On the other points I concur with the opinion just delivered by Chancellor Dunkin.
Johnson, Ch. dissented;